## Manning v. Manning.

(Decided May 11, 1920.)

### Appeal from Jefferson Circuit Court (Chancery Branch, Second Division).

1. Divorce—Abandonment—Insufficiency of Evidence.—In this action by the husband against the wife for divorce on the ground of abandonment of one year, evidence examined and held insufficient to entitle him to a divorce.

2. Divorce—Evidence Insufficient to Entitle Husband to Divorce.—Where, as in this case, it is made to appear from the evidence that marital troubles between the husband and wife, leading to his leaving the wife and their two daughters in possession of the family home and taking up his residence at another place, were as much caused by the habitually sullen, resentful manner of the husband toward the wife, his irritable temper, lack of affection for and neglect of her, as by the wife's violent, and at times, ungovernable temper, the chancellor was justified in holding that the husband was as much to blame as the wife for their separation; therefore the divorce sought by the husband was properly refused.

H. J. TILFORD for appellant.

P. J. RILEY for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

In this action for a divorce *a vinculo* brought by the appellant, Micheal J. Manning, against his wife, the appellee, Emily L. Manning, the ground relied on in the petition, as amended, for the severance of the marital relation existing between them is the alleged abandonment of the former by the latter of more than a year's continuous duration. The appellee did not herself seek a divorce or alimony, but resisted the right of appellant to the divorce by filing an answer containing a complete traverse of the averments of the petition. Following the taking of proof by the parties and submission of the case the circuit court, by the judgment rendered therein, refused appellant a divorce and dismissed the petition. He prayed and was granted an appeal, the prosecution of which to this court requires of us a review of the judgment.

The evidence relating to the ground of divorce is contained in six depositions found in the record, three of which were taken for the appellant and three for the appellee; one of appellant's witnesses being his sister and one of appellee's a twelve year old daughter born of her marriage with the appellant. It should here be stated, however, that the deposition of a fourth witness was taken by appellant, but it was only read in rebuttal to support the reputation of a Mrs. Crowley to whom the deposition of his daughter, by implication at least, had attributed some sort of improper relation with him. We deem it unnecessary to discuss in detail the evidence relied on by appellant to obtain the divorce prayed, or that relied on by appellee to prevent his obtention of it, but only to set forth the salient facts furnished by it and the conclusions at which we have arrived from a careful consideration of those facts, together with such conclusions of law as we think applicable to them.

Appellant and appellee were married November 26, 1902, and lived together as man and wife until some time in November, 1917, at which time he left her and their home in Louisville and took up his residence elsewhere in that city and has since lived apart from her. Two daughters were born of their marriage, one of them now fourteen and the other twelve years of age. According to the claim and evidence of appellant he was compelled to leave his home and family because of appellee's violent temper, abuse of him and refusal to cohabit with

him. Two of his witnesses, one of them his sister, claimed to have seen appellee prevent their daughters from accompanying appellant from their home, and to have heard her say she would not sleep with him and did not intend to have any more children by him; also to have heard her frequently nag and abuse him. On the other hand, according to the evidence taken in appellee's behalf, she was an economical, helpful wife, unusually affectionate at times toward appellant and was often heard to address him in the most endearing terms. The testimony of appellee's witnesses also went to show that at such times as appellee displayed her temper toward appellant it was caused by his staying away from home at night or by his abuse of her. Her witnesses testified that they had more than once heard appellant curse appellee and abuse her in language both profane and obscene.

But notwithstanding the many things found in the evidence reflecting discredit upon the conduct both of appellant and appellee, it should be said in commendation of each of them that it also shows that both have a sincere affection for their children and do not hesitate to make sacrifices for them; and, further, that both are persons of unusual industry. This is demonstrated by the facts that appellant, since leaving his home, has contributed weekly out of his daily wages to the support of the two daughters and all the while made monthly payments of the debt he is owing on the home occupied by the daughters and appellee. At the same time, and continuously since her separation from appellant, appellee by her labors at the wash tub and otherwise, has supported herself and also materially helped to support the daughters. It is also to the credit of appellant that his recognition of appellee's fitness to retain the custody of their daughters is shown by the failure of the petition to claim for himself such custody; and equally to the credit of appellee that her answer makes no claim for alimony and that she seems willing to rely upon appellant's purpose to continue his assistance to the support of the daughters, rather than to ask that he be compelled by the court to render such assistance.

We think it patent from the evidence that appellant is as much to blame as appellee for the marital troubles that came upon them. While she is evidently a woman of strong and at times ungovernable temper, he is shown

to be a sullen, resentful man of irritable temper, apparently lacking in affection for his wife and indifferent to her happiness. Different and affectionate treatment by him of the wife might have led to a restoration of their conjugal peace and the resumption of the cohabitation that had marked the former years of their marital relations. She no more abandoned him than he abandoned her. The parties being equally at fault, and the abandonment mutual, neither was entitled to a divorce. Sanders v. Sanders, 184 Ky. 119. Divorce is not a panacea for all matrimonial ills, and where, as in this case, the ills are found to have been caused by the mutual misconduct of the parties themselves, the courts will leave them in the situation imposed by such misconduct. The party seeking a divorce on the ground of abandonment for one year must allege and prove that the abandonment was without his or her fault. Epling v. Epling, 1 Bush 74; Canine v. Canine, 13 R. 124. Appellant having failed to show that appellee's alleged abandonment of him was without fault on his part, the action of the court in refusing him the divorce prayed was not error. Judgment affirmed.